UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NORTH AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>QSR STEEL CORPORATION LLC, et al.,<br><br>*Defendants.* | Civil No. No. 3:21-cv-00247<br><br>September 12, 2022 |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff, the surety in the indemnification agreement at issue, brings this action against Defendants, the indemnitors. Plaintiff alleges that Defendants failed to indemnify it as required by the indemnity agreement between the parties. (Compl. [Doc. # 1]). Plaintiff moves for summary judgment [Doc. # 1] on Count One, breach of contract, arguing that it has made the prima facie showing of good faith payments necessary to recover under the indemnification agreement. Plaintiff also argues that it is entitled to interest on any judgment and attorney's fees.

For the reasons that follow, Plaintiff's motion for summary judgment is granted.

**I.    Background**

In 2019, Nosal Builders, Inc. ("Nosal") entered into an agreement to construct a project for the Connecticut Department of Transportation. (Pl.'s Loc. R. 56(a)(1) Stmt. ¶ 1). Nosal then subcontracted with Defendant QSR Steel Corporation LLC ("QSR"). (*Id.* ¶ 2). Pursuant to the subcontract, Plaintiff issued a performance bond guaranteeing performance of the subcontract and a payment bond. (*Id.* ¶ 3). The purpose of the bond was to benefit QSR's subcontractors and suppliers for the project. (*Id.*). As a condition of issuing the bonds,

1

QSR and the rest of Defendants entered into a General Indemnity Agreement ("GIA") with Plaintiff. (*Id.* ¶ 4).

Pursuant to the GIA, Defendants agreed to jointly and individually

> [e]xonerate, hold harmless and indemnify the Surety from and against any and all liability, loss, costs, damages, fees of attorneys and consultants, and other expenses, including interest, which the Surety may sustain or incur by reason of, or in consequence of, the execution of such bonds and any renewal, continuation or successor thereof, including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits, or judgments under such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure a release of liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

(*Id.* ¶ 6). The GIA also authorized Plaintiff to,

> in the event of any breach or default in the performance of the contract, or the breach of this Agreement or of any bond connected therewith, or the failure to diligently prosecute the work under any contract, or to pay for labor and materials used in the prosecution of the contract . . . or in the event work has ceased or been suspended on any contract or contracts covered by any said bonds, . . . take possession of the work under the contract, and, at the expense of the Indemnitors, to complete the contract or cause the same to be completed or to consent to the completion thereof, and to take any other action which the Surety may deem appropriate.

(*Id.* ¶ 7). Plaintiff had

> the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against the Surety or the Indemnitors, or any one of them, on any such bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision thereon, if made in good faith, shall be final and binding upon the Indemnitors. The Surety shall have no obligation to tender its defense to any Indemnitor. If the Surety elects not to tender its defense to any Indemnitor, the Indemnitors shall nevertheless remain liable to the Surety for any and all loss, costs, damages, interest,

2

> expenses, including but not limited to attorneys' fees and consulting fees resulting from the Surety's investigation and/or defense. An itemized statement of payments made by the Surety for any of the purposes specified herein, sworn to by any officer of the Surety, or the voucher or vouchers of such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety for such payments, with interest.

(*Id.*)

After the bonds were issued, Plaintiff received a claim against the performance bond by Nosal, stating that QSR Steel had materially breached the subcontract and the subcontract had been terminated. (*Id.* ¶ 8). Plaintiff then received claims on the payment bond from companies claiming that QSR Steel failed or refused to make payments that were due for labor, materials, and equipment furnished for the project. (*Id.* ¶ 9).

To comply with the performance bond, Plaintiff agreed to complete QSR Steel's work for the project, using QSR Steel as the contractor to complete the project. (*Id.* ¶ 10). This takeover agreement was approved by QSR Steel. (*Id.* ¶ 11). Plaintiff maintains that after the agreement, all sums paid by Nosal to Plaintiff were paid to QSR Steel's subcontractors and vendors. (*Id.* ¶ 14). As part of the takeover process, Plaintiff and QSR Steel also entered into an agreement reaffirming QSR Steel's obligations under the GIA and its agreement to carry out the remaining work for the project. (*Id.* ¶ 15).

Plaintiff notified Defendants of the claims made by QSR Steel's vendors and subcontractors and the fact that Defendants are obligated to make payment to Plaintiff under the GIA. (*Id.* ¶ 17). Nonetheless, Defendants have, Plaintiff alleges, not fulfilled their obligation to exonerate, indemnify, and hold Plaintiff harmless from the claims, demands, and losses that resulted from Defendants' failure to fulfill their duties and obligations under the subcontract, bonds, and GIA. (*Id.* ¶ 18). Plaintiff represents that all costs incurred by Plaintiff under the bond and payments made by Plaintiff under the bond were made in good

faith and in satisfaction of Plaintiff's obligations under the bonds and agreements with QSR Steel. (*Id.* ¶ 19).

Defendants have not yet reimbursed Plaintiff for any of the losses or costs it incurred in investigating, administering, and settling claims on the bond. (*Id.* ¶ 20). Plaintiff states that it is owed a minimum of $200,400.29. (*Id.* ¶ 21).

Parties were given six months to complete discovery before the filing of Plaintiff's motion for summary judgment. (Scheduling Order [Doc. # 24]; Scheduling Order Oct. 25, 2021). Defendants did not serve discovery until a month before the discovery deadline. (Defs.' Mot. for Extension of Time [Doc. # 32] at 1). Defendants then filed a motion for extension of time to file their opposition, claiming that none of the documents Plaintiff produced were responsive and that the missing documents were "absolutely necessary" to prepare their opposition to Plaintiff's motion. (*Id.* at 1). The Court granted Defendants' motion but noted that Defendants had not specified which documents were at issue. (Scheduling Order, December 9, 2021).

## II.     Standard

Summary judgment can be used to resolve disputes about indemnification agreements. *Arch Ins. Co. v. Centerplan Constr. Co., LLC*, 368 F. Supp. 3d 350, 361 (D. Conn. 2019) aff'd, 855 F. App'x 11 (2d Cir. 2021). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of showing that there is no dispute of material fact rests on the movant. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id*. However, the nonmovant cannot rely on "the allegations in [their] pleading . . . or on conclusory statements" to create a dispute of

4

material fact. *Gottlieb v. Cnty. Of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted). Even where the nonmovant alleges that there has been insufficient or inadequate discovery, they "cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in [their] complaint, and amplifying them only with speculation about what discovery might uncover." *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir.1981).

### III.  Analysis

#### a. Prematurity

Rather than contesting the content of Plaintiff's statement of undisputed fact, Defendants claim that Plaintiff's motion is premature because Defendants have not received the discovery materials they need to substantively respond. (Defs.' Mem. In Opp'n [Doc. # 37] at 3). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). However, "the trial court may properly deny further discovery if the nonmoving party has had a fully adequate opportunity for discovery," particularly where the nonmoving party has "proffered no persuasive basis for the . . . court to conclude that further discovery would yield [relevant information]." *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511-12 (2d Cir. 1989).

Defendants allege that Plaintiff has not provided any materials related to communications between Plaintiff and its consultant, Alliance Consulting Group, or supporting the damages being claimed. (Defs.' Mem. In Opp'n at 3). Plaintiff, however, claims that Defendants' arguments are "nothing more than a stall tactic." (Pl.'s Reply [Doc. # 38] at 2). Plaintiff characterizes Defendants' requests as seeking documents already provided and asserts that Plaintiff responded to Defendants' request in a timely manner and some of the requests sought privileged information. (Pl.'s Reply [Doc. # 38] at 2-3).

5

The Court is unpersuaded by Defendants' arguments. First, Defendants have been afforded a lengthy opportunity for discovery. *See Hellstrom*, 201 F.3d at 97 (finding that summary judgment was prematurely granted when the plaintiff was denied the opportunity to conduct any discovery and was precluded from taking depositions). Defendants also, despite urging from the Court, have never "described in specific terms evidence that might be forthcoming and would demonstrate that a genuine issue actually existed." *U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 995 F.2d 375 (2d Cir. 1993). Finally, if Defendants wished to challenge Plaintiff's discovery responses and objections, the better avenue would have been a motion to compel. *See Lego A/S v. Best-Lock Construction Toys, Inc.*, 319 F.R.D. 440, 452 (explaining that defendant's claimed delay in receiving necessary discovery did not prejudice defendant because defendant did not "claim[] that such evidence is unavailable to it because of the delay or any continued delay, but instead confine[d] itself to complaining that [plaintiff] . . . wrongfully refused to produce it," an argument that is "more properly made in a motion to compel"). Defendants cannot suffer prejudice from some theoretical evidence it has been denied if [Plaintiff] is rightfully refusing to give it," but with the information before it, the Court cannot determine whether Plaintiff is justified in its alleged withholding of discovery. *Id.*

### b. Summary Judgment on Count One

Plaintiff moves for summary judgment on its breach of contract claim, arguing that Defendants have breached the GIA agreement as a matter of law. The indemnification agreement between the parties grants Plaintiff the exclusive right to determine how to handle claims on the bond, obligates Defendants to indemnify Plaintiff for losses, and establishes that evidence of payments provided by Plaintiff is prima facie evidence of the Defendants' liability to the Plaintiff. These indemnity and right-to-settle provisions "are typical of indemnity agreements in the surety industry and courts have routinely upheld the validity of similar or identical provisions." *Arch*, 368 F. Supp. 3d at 367. Furthermore, prima

facie evidence provisions are "frequently [] invoked to enable a surety to prevail on a motion for summary judgment." *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 267 Conn. 279, 293 (Conn. 2004). When there is a prima facie evidence provision, "upon a finding that a surety has made a payment to a claimant upon a bond, the burden of proof shifts to the indemnitor to prove that the surety had not made the payment in good faith." *Id.*; *see also Colonial Surety Co. v. Phoenix Contracting Grp., Inc.*, UWYCV106045128, 2021 WL 3127092, at *6 (Conn. Super. Ct. June 23, 2021) (applying this burden-shifting in the summary judgment context).

Under the GIA "[a]n itemized statement of payments made by the Surety for any of the purposes specified herein, sworn to by any officer of the Surety, . . . shall be prima facie evidence of the liability of the Indemnitors." (GIA [Doc. # 31-4] at 3). Plaintiffs have provided an itemized list of payments [Doc. # 31-9] and an affidavit by the claims manager at North American Specialty who was responsible for the bonds stating that he fully investigated all claims on the bonds, all payments made under the bonds were made in good faith, and the itemized list is true and correct [Doc. # 31-3]. Plaintiff has, therefore, provided the necessary prima facie evidence to shift the burden to Defendants. *See Colonial Surety Co.* 2021 WL 3127092, at *6 (finding under similar facts that Plaintiff met their burden); *U.S. Fidelity & Guar. Co. v. Petroleo Brasileiro S.A. – Perobras*, No. 98 Civ.3099(THK), 2005 WL 289575, at *25-26 (Feb. 4, 2005) (same).

The Court finds that Defendants have not created a dispute of material fact about whether Plaintiff acted in good faith. Defendants make no argument, not even conclusory assertions that Plaintiff did not act in good faith. Indeed, they expressly state that "NAS may very well have acted in good faith." (Defs.' Mem. In Opp'n at 4). This is insufficient to create a material question of fact about Plaintiff's actions. *Banque Nationale de Paris S.A. v. Ins. Co. of North America*, 896 F. Supp. 163, 165 (granting summary judgment for the surety because

7

there was "not a scintilla of evidence, as distinct from conclusory assertions, that [the surety] acted inappropriately"). Plaintiff's motion is therefore granted.

### c. Interest on Judgment

Plaintiff requests that the Court award pre- and post-judgment interest, pursuant to Conn. Gen. Stat. § 37-3a(a). (Pl.'s Mem. [Doc. # 31-1] at 13-15]. Under § 37-3a(a) "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." "The purpose of § 37–3a is not to punish persons who have detained money owed to others in bad faith but, rather, to compensate parties that have been deprived of the use of their money." *Sikorsky Fin. Credit Union, Inc. v. Butts*, 315 Conn. 433, 442 (Conn. 2015) (internal quotation marks omitted). "Whether a prevailing party will receive interest as damages pursuant to § 37–3a is principally an equitable question lying within the trial court's discretion." *Id.* A court can award both pre- and post-judgment interest, or just one of the two, and has discretion to set the interest rate, up to ten percent. *Id*. Awarding interest "does not require proof of bad faith or unreasonable conduct above and beyond proof of the underlying legal claim." *Sosin v. Sosin*, supra, 300 Conn. 205, 230 n.18 (Conn. 2011). This is satisfied by a judgment in the plaintiff's favor on their claim. *DiLieto v. Cnty. Obstetrics & Gynecology Grp, P.C.*, 310 Conn. 38, 52 (Conn. 2013).

The Court awards pre-judgment interest at the Prime Rate of 3.25%, simple interest to run monthly from January 13, 2021 (30 days after Plaintiff's December 14, 2021 demand letter to Defendants [Doc. # 31-8]). The Court awards 3.62 % post-judgment interest, the weekly average 1-year Treasury yield. No interest is awarded for attorney's fees.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. # 75] is GRANTED. Plaintiff's fully supported application for attorney's fees "incur[red] by reason of,

8

or in consequence of, the execution of [the bonds at issue]" (GIA at 1) shall be filed within 21 days from this ruling (September 12, 2022). Defendants' responses, if any, shall be filed 14 days thereafter.

                      IT IS SO ORDERED.

                      _____/s/_____
                      Janet Bond Arterton, U.S.D.J.

            Dated at New Haven, Connecticut this 12th day of September 2022